

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEG:JPM                              *271 Cadman Plaza East*
F. #2017R01869                       *Brooklyn, New York 11201*

September 18, 2019

By ECF and Hand Delivery

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Kyron Graham
             Criminal Docket No. 18-561 (S-1) (DLI)

Dear Chief Judge Irizarry:

The government respectfully submits this letter in connection with the defendant Kyron Graham's sentencing proceeding, which is scheduled to occur on October 2, 2019. For the reasons set forth below, the government respectfully requests that the Court impose a sentence between 24 and 30 months' imprisonment—the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range applicable to the defendant's offense of conviction.

I.      Factual Background

The defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(C). See Presentence Investigation Report issued June 19, 2019, at ¶ 1 ("PSR"). This plea, to Count One of a superseding indictment returned on November 19, 2018 (ECF Dkt. No 37), was pursuant to an agreement with the government. As part of the plea agreement, the government agreed to dismiss Count Two of the superseding indictment, which charged possession with intent to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), at the time of sentencing.

The defendant's conviction stems from his participation, between July and September 2018, in a drug-trafficking conspiracy that sold heroin across Staten Island, New York. See PSR ¶¶ 7-9. The principal participants in the conspiracy were the co-defendants, Keith Wyche ("Wyche") and Oneil Allen ("Allen"), who are awaiting trial on this docket.

The defendant's role in the conspiracy, as further described below, was as a source of drug supply for Wyche and Allen.  PSR ¶ 11-12.

The defendant came to the attention of law enforcement at the end of the government's investigation into co-defendants Wyche and Allen.  Prior to that time, the Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") had linked a series of drug overdoses in Staten Island to a pair of drug dealers who used the names "Marco" and "James."  Marco was later identified as Wyche, and "James" was identified as Allen.  Significant evidence showed that they worked closely with one another, including by sharing customers, using the same cellular telephones to contact customers, sharing vehicles, and working from a common location in New Jersey. PSR ¶¶ 9-10.

Wyche and Allen sold to customers principally from their vehicles—driving around Staten Island to make sales.  PSR ¶ 9.  Wyche and Allen sold what are referred to as "bundles" of heroin, individually packaged glassines held together by rubber bands.  During the investigation, law enforcement agents placed GPS tracking devices on three vehicles used by Wyche and Allen—a white 2011 Jeep Grand Cherokee (the "Jeep Vehicle"); a white 2015 Lexus GS350 (the "Lexus Vehicle"); and a green 2007 Infiniti M35 (the "Infiniti Vehicle").  PSR ¶¶ 3, 9.  During the period of tracking, law enforcement officers conducted controlled purchases of narcotics from both Wyche and Allen and confirmed their use of the vehicles to make heroin and fentanyl sales.

The defendant entered the picture during the tracking period, when law enforcement agents identified that Wyche and Allen repeatedly were driving to a specific area on Morris Avenue in the Bronx.  PSR ¶ 11.  That location was determined to be the defendant's apartment building.  Surveillance video from the foyer of that building showed that the defendant would meet Wyche or Allen in front of the building.  The duration of these meetings varied on each occurrence between approximately one minute and one hour.  As noted in the complaint originally filed in this case, Wyche and Allen would drive over an hour <u>each way</u> to and from Staten Island and New Jersey to meet the defendant.  Wyche and Allen also did not leave their vehicles during the meetings with the defendant, generally double parking in the street in front of his apartment.

The video surveillance evidence showed that when the defendant met with Wyche and Allen in front of his building, he appeared to be supplying them packages of narcotics.  The government has surveillance video of the following encounters between the defendant and Wyche and Allen:

- **July 31, 2018**: The Lexus Vehicle (Allen) arrived in the street in front of the defendant's apartment at 7:15 p.m. and departed at 8:13 p.m.  After Allen arrived and parked in the street, the defendant traveled from his apartment to the street to meet the vehicle.  When the defendant left the apartment building, video surveillance showed a large, round bulge visible in the right, rear side of the defendant's pants.  When the defendant left the vehicle, surveillance

2

footage showed that a bulge in the rear of the defendant's pants was no longer visible, indicating he had left the package in the vehicle.

- **August 4, 2018**: The Lexus Vehicle (Allen) arrived in front of the defendant's apartment at 4:36 p.m. and left approximately seven minutes later at 4:43 p.m. Surveillance video from inside the defendant's building showed him carrying a plastic bag, with a white substance inside, and shaped in a ball. When the defendant reached the lobby, he placed the bag in his rear pocket, in a similar location to where the bulge was seen in the July 31, 2018 video. The defendant was inside Allen's Lexus Vehicle for only four minutes.

- **August 8, 2018**: Wyche's Jeep Vehicle arrived in front of the defendant's apartment at 2:00 p.m. The defendant went from the street to the inside of his building and up to his apartment. The Jeep Vehicle waited for 15 minutes in front of the building. The defendant and a companion then left the apartment building, met the Jeep Vehicle for approximately one minute, and the Jeep then departed to drive back to New Jersey.

- **August 11, 2018**: Wyche's Jeep Vehicle arrived at the defendant's apartment at 9:37 a.m. The defendant went from his apartment to the street to meet the Jeep Vehicle. He got inside through the rear passenger door. The defendant was in the Jeep Vehicle for five minutes before it departed.

These brief meetings, occurring every three or four days, were consistent in their pattern and duration with the defendant supplying Wyche and Allen narcotics to sell between the meetings.

II.   Procedural History

The defendant was arrested on September 18, 2018 and charged (along with Wyche and Allen) by criminal complaint with conspiracy to distribute and possess with intent to distribute heroin and fentanyl. On November 19, 2018, the defendant was charged in the superseding indictment. The defendant was detained between September 18, 2018 and January 28, 2019, when he was released on a $200,000 bond.

On March 22, 2019, the defendant entered a guilty plea to Count One of the superseding indictment. As part of his plea agreement, the government agreed with the defendant that the amount of heroin he was responsible for distributing was between 60 and 80 grams. The government made this estimate based on the video surveillance evidence showing the above-described meetings between the defendant and Wyche and Allen, and the

government's estimate that each meeting resulted in the defendant providing 20 grams of heroin to Wyche and Allen.  PSR ¶ 11.  The defendant has stipulated to this calculation.

   The U.S. Probation Office ("Probation") issued the PSR on June 19, 2019.

III.  The PSR and Guidelines Calculation

   The PSR sets forth a Guidelines calculation that the government respectfully requests be adopted by the Court.  The base offense level, determined from the weight of the heroin, is 20.  See U.S.S.G. §§ 2D1.1(a)(5) & (c)(10).  The defendant participated in the conspiracy between July 2018 and September 2018, which was a fraction of the time period during which Wyche and Allen were distributing in Staten Island.  There is no evidence available to the government that the defendant knew about the extent of Wyche and Allen's sales, the overdoses linked to them, or the totality of their dealing activities.  Thus, a minor role adjustment is appropriate.  See U.S.S.G. § 3B1.2(b).  The defendant's total offense level should, thus, be 18.

   With acceptance of responsibility, including the government's motion for early acceptance pursuant to U.S.S.G. § 3E1.1(b), the total offense level is 15.

   The defendant has a prior felony conviction for criminal possession of a weapon in July 2011.  PSR ¶ 32.  According to the PSR, this offense was committed during a series of violent acts that occurred on October 29, 2009.  First, the defendant apparently shot a firearm into an occupied vehicle, grazing an occupant.  Thereafter, he and another person took part in a violent burglary incident where the defendant held residents of an apartment at gunpoint.  PSR ¶ 32.  This results in three Criminal History points.  In 2016, the defendant was convicted of petit larceny related to stealing a cellphone.  PSR ¶ 33.  This results in one Criminal History point.  Finally, the defendant committed the instant offense while on parole, leading to two additional Criminal History points.  PSR ¶¶ 32, 35.  With six Criminal History points, the defendant is in Criminal History Category III.

   The government submits that the Court should adopt the foregoing Guidelines calculation, which results in an advisory range of 24 to 30 months' imprisonment.

IV.  Applicable Law

   In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still required to consider Guidelines ranges in determining sentences but also may tailor the sentence in light of other statutory concerns.  See 543 U.S. 220 (2005); see also 18 U.S.C. § 3553(a).  Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)."  United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).  Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not

"return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

Later, in Gall v. United States, the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the court] may not presume that the Guidelines range is reasonable.  [The court] must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

## V.      The Appropriate Sentence

A Guidelines sentence is appropriate here because the crime was serious, such a sentence would be just punishment, it is necessary to promote adequate deterrence, and because it would properly account for the defendant's history and characteristics.  Foremost, this offense, as most drug-trafficking crimes are, is serious in nature, which weighs heavily in favor of a Guidelines sentence.  See 18 U.S.C. § 3553(a)(1).  The defendant voluntarily put himself into this conspiracy, enabling his co-defendants to continue their business of poisoning Staten Island communities.  He also did not supply Wyche and Allen drugs on one occasion or simply do them a quick favor—he met his co-defendants repeatedly, outside of his own apartment building, to provide narcotics.

The government respectfully submits that the defendant's history and characteristics support a Guidelines sentence.  See 18 U.S.C. § 3553(a)(1).  This is not the defendant's first encounter with the criminal justice system.  His prior felony conviction, as the PSR recounts, was part of a violent pattern of criminal activity by the defendant, where the defendant fired into a vehicle and struck an occupant.  PSR ¶ 32.  The records from the defendant's state incarceration showed a number of disciplinary violations, including drug use.  And the Court should also consider that the defendant chose to commit new crimes while on New York State parole, and having already sustained a prior parole violation.  See PSR ¶ 32.  Both of the co-defendants have significant felony criminal histories, including prior drug trafficking convictions.  They lived more than hour from the defendant, and yet he chose to associate with them and involve himself in their business.

In view of the defendant's history, including prior parole violations and a prior significant term of incarceration, the need for the sentence imposed to promote respect for the law weighs heavily in favor of a Guidelines sentence in this case.  See 18 U.S.C. § 3553(a)(2)(A).  It is equally necessary to afford both adequate general and specific deterrence for drug-trafficking crimes.  See 18 U.S.C. §§ 3553(a)(2)((B), 3553(a)(2)(C).

The foregoing § 3553(a) factors, taken together, support the imposition of a Guidelines sentence.

VI.   <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the range of 24 to 30 months' imprisonment.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:    /s/ James P. McDonald
        James P. McDonald
        Assistant U.S. Attorney
        (718) 254-6376

cc:    Jennifer Baumann, U.S. Probation Officer (by E-mail)
      William D. Sarratt, Esq. (by ECF)
      Clerk of the Court (DLI) (by ECF)